IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALLEN MAURICE THOMPSON,
        Plaintiff,

vs.                                                              Case No.:  3:12cv11/LAC/EMT

RONALD BELHOMME, et al.,
        Defendants.
_____/

## REPORT AND RECOMMENDATION

        Plaintiff Allen Maurice Thompson ("Thompson"), a prisoner proceeding pro se and in forma pauperis, filed this action under 42 U.S.C. § 1983 (doc.  1).[1]  The matter is now before the court on a motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6), filed by Defendants Haas, Nichols, and Rummel (doc. 38).  Thompson filed a response in opposition to the motion, with an attached proposed amended complaint (doc. 44).  For the reasons stated below, the court recommends that Defendants' motion to dismiss be granted.

I.        BACKGROUND

        The five remaining Defendants in this case are:  Ronald Belhomme, a correctional officer at Everglades Correctional Institution ("Everglades C.I."); M. Nichols, an Advanced Registered Nurse Practitioner ("ARNP") at Santa Rosa Correctional Institution ("Santa Rosa C.I."); W.D. Rummel, Chief Health Officer at Santa Rosa C.I.; J. Haas, an Assistant Warden at Santa Rosa C.I.;

_____

        [1]  Plaintiff initially filed this action in the United States District Court for the Southern District of Florida (doc. 1).  He named eight Defendants, four of whom were employed at Everglades Correctional Institution and four of whom were employed at Santa Rosa Correctional Institution (*id.*).  The district court for the Southern District dismissed Plaintiff's claims against three of the Everglades Defendants for failure to state a claim (doc. 12).  The district court for the Southern District subsequently transferred the case to this district court for disposition of Thompson's claims against the Santa Rosa Defendants and the remaining Everglades Defendant (doc. 26).

and John Doe, a correctional officer at Santa Rosa C.I. (doc. 1 at 2–6).[2]  Thompson alleges the following facts in support of his claims.[3]  On November 3, 2010, while Thompson was housed at Everglades C.I., Belhomme allegedly subjected Thompson to excessive force by kicking closed the food tray flap of Thompson's cell door on Thompson's left hand (*id.* at 7–9).[4]  Thompson was taken to the emergency room of a local hospital, where a doctor diagnosed his injuries as damage to the tendons of the "middle finger" of his left had and injury to his index finger (*id.* at 9–10).  Thompson received surgery and stitches (*id.*).  On November 19, 2011, Thompson had a follow-up appointment with the same doctor from the local hospital, who removed the stitches and recommended that Thompson receive physical therapy to regain full use of his left hand (*id.* at 10–11).  Thompson returned to Everglades C.I., where he received a green TheraBand (a thick resistance band) and one page of instructions for hand exercises (*id.* at 11–13).

On February 28, 2011, Thompson arrived at Santa Rosa C.I. (doc. 1 at 13).  Upon his arrival, Thompson showed Defendant Officer John Doe the medical pass issued at Everglades C.I. authorizing his possession of the TheraBand and exercise instruction sheet (*id.* at 13).  Officer Doe took the medical pass, TheraBand, and exercise instruction sheet, and conducted a search of Thompson's property (doc. 1 at 14; doc. 44-1, proposed amended complaint at 4).  Thompson was then escorted to the medical department (doc. 1 at 14).  After Thompson was moved to a cell, he received his property, but the TheraBand and exercise instruction sheet were not returned (doc. 1 at 14; doc. 44-1, proposed amended complaint at 4).  Thompson submitted sick call requests and filed grievances requesting the therapy items and complaining of severe pain, swelling, and stiffness in his finger (*id.* at 14–15).  Thompson states Defendants Nichols, Rummel, and Haas denied his

---

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

[3] All facts are derived from Thompson's complaint and proposed amended complaint (doc. 1 at 7–16; doc. 44, proposed amended complaint).  Because the court accepts as true the well-pleaded allegations of the complaint and proposed amended complaint, "the facts" as set out in this Report may not be the actual facts.  Cottone v. Jenne, 326 F.3d 1352, 1355 & n.1 (11th Cir. 2003).

[4] Belhomme filed an answer in this case (doc. 41) and did not join in the instant motion to dismiss filed by Defendants Nichols, Rummel, and Haas.  Therefore, Thompson's allegations and claims against Belhomme will not be further addressed in this Report.

grievances (*id.* at 15). He alleges ARNP Nichols is responsible for providing medical care to inmates when she knows that a prisoner needs such care (doc. 1 at 16; doc. 44-1, proposed amended complaint at 2). He alleges Chief Health Officer Rummel is responsible for providing medical care to prisoners, including providing specialized medical care outside the institution when such care is needed (*id.*). Thompson alleges Assistant Warden Haas is responsible for ensuring prisoners receive proper medical treatment when she knows a prisoner is in need of such treatment, and arranging transportation for medical appointments outside the institution (*id.*). Thompson alleges Nichols, Rummel, and Haas were informed, through his grievances, that the TheraBand and exercise instruction sheet had been taken from him, that the items had been prescribed by a physician, and that he needed the items for treatment of his hand (doc. 44-1, proposed amended complaint at 5–6). Thompson alleges he is in great pain, and his left fingers are stiff and do not properly bend (*id.*).

Thompson alleges the conduct of Officer John Doe, ARNP Nichols, CHO Rummel, and Assistant Warden Haas violated the Eighth Amendment (doc. 1 at 18–19). He also asserts state law negligence claims (*id.*). As relief, Thompson seeks a declaratory judgment, compensatory and punitive damages, and an injunction requiring Defendants to immediately arrange for his hand to be examined by a medical practitioner with expertise in the treatment and restoration of function of broken hands, and the provision of any and all treatment recommended by the expert (*id.* at 19–22).

Nichols, Rummel, and Haas move for dismissal of the complaint on the ground it fails to plead sufficient factual grounds to state a claim upon which relief can be granted (doc. 38 at 1). They contend Thompson's allegations that they "should" have known about the deprivation of medical treatment, because they were generally responsible for inmate medical care and denied his grievances, seek to hold them liable under the doctrine of respondeat superior, which is not available in § 1983 actions (*id.* at 5–7). Additionally, Nichols, Rummel, and Haas contend Thompson does not allege he had any personal involvement with any of them, and the fact that they denied his grievances is insufficient to suggest deliberate indifference to his medical needs (*id.* at 7–10). They further argue that a difference of opinion between them and the hospital physician who prescribed the physical therapy does not state a claim of deliberate indifference (*id.* at 8–10). They contend to

the extent Thompson bases his Eighth Amendment claim on their alleged negligent acts, such conduct does not rise to the level of a constitutional violation (*id.* at 10).

Nichols, Rummel, and Haas additionally contend Thompson's request for injunctive relief should be dismissed as moot due to his transfer to another institution (doc. 38 at 11–12).  They also claim they are entitled to Eleventh Amendment and qualified immunity as to Thompson's claims for monetary damages (*id.* at 14–16).  Finally, they argue Thompson's pendent state law claims for negligence should be dismissed (*id.* at 13–14).

II.    LEGAL STANDARDS

A.    Dismissal under Rule 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii)

Because Thompson is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious;  (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989).  Dismissals for failure to state a claim to relief under § 1915(e)(2)(B)(ii) are considered under the same standard that governs dismissals pursuant to Federal Rule of Civil Procedure 12(b)(6).  Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997).  The allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff.  Davis v. Monroe County Bd. of Ed., 120 F.3d 1390, 1393 (11th Cir. 1997).  The pleadings of a plaintiff who proceeds pro se, such as Thompson in this case, are held to a less stringent standard than is applied to pleadings prepared by an attorney, and they must be construed liberally.  Haines v. Kerner, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006).  The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face.  *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561–63, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim).

B.    Eighth Amendment—Deliberate Indifference to Medical Needs

It is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners.  Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991).  Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'"  Id. at 1505 (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).  Incidents of mere negligence or malpractice do not rise to the level of constitutional violations.  Id. (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component.  Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000).  First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'"  Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)).  Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment.  Id. (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements.  Taylor, 221 F.3d at 1258.  As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need."  Estelle, 429 U.S. at 104.  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); see Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm.").  In addition, an objectively serious deprivation requires showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); see Taylor, 221 F.3d at 1257; see also Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105.  "Deliberate indifference has three components:  (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference.  Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994).  However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made.  Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)).  To do otherwise would be "to constitutionalize claims that sound in tort law."  Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

C.     Supervisory Liability

Supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted).  This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted).

Isolated incidents are generally insufficient to establish a supervisor's liability.  *See* Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir.1999)); Wayne v. Jarvis, 197 F.3d 1098, 1106 (11th Cir. 1999).  Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied.  *See* Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).  Prison officials who were not involved in the alleged constitutional violation, and whose only roles involved the denial of administrative grievances or the failure to act, are not liable under § 1983.  *See* Grinter v. Knight, 532 F.3d 567 (6th Cir. 2008); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); *see also* Lomholt v. Holder, 287 F.3d 683, 683 (8th Cir. 2002) (defendants' denial of plaintiff's grievances did not state a substantive constitutional claim); Weaver, 756 F.Supp. at 337 (holding that prisoner failed to state a § 1983 claim against supervisory officials, where prisoner merely alleged the officials denied his grievance and did not allege they were personally involved in the alleged misconduct).  Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights."  Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994).  The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur.  *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996).  Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary.  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."  Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

III.   DISCUSSION

Thompson contends Officer John Doe violated the Eighth Amendment by taking the medical pass, TheraBand, and exercise instruction sheet provided by personnel at Everglades C.I. and failing to return them.  However, Officer Doe's taking the items during his search of Thompson's property upon Thompson's arrival at Santa Rosa C.I. and failure to return them, in the absence of

authorization from Santa Rosa C.I. medical personnel for Thompson to possess them, was not unreasonable.  Further, given the availability of a process for Thompson to obtain such approval from Santa Rosa medical personnel, the fact that Officer Doe did not return the items does not suggest he subjectively knew that his failure to return them posed a risk of serious harm to Thompson's health; nor do the facts suggest Officer Doe intended to use the medical deprivation as a means of punishment.  Therefore, Thompson's allegations fail to state a plausible Eighth Amendment claim against Defendant Officer John Doe.[5]

Thompson contends ARNP Nichols, CHO Rummel, and Assistant Warden Haas violated the Eighth Amendment by failing to provide the TheraBand and exercise instruction sheet after he advised them in grievances that the items had been confiscated, and he was unable to participate in prescribed therapy without them. As previously discussed, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied.  Further, Thompson does not otherwise allege facts suggesting the deprivation of his therapy items resulted from direct action by ARNP Nichols, CHO Rummel, or Assistant Warden Haas; an official custom, policy, or practice of any of these Defendants; or any other circumstances that provide a legal basis for holding them liable under § 1983. Therefore, Thompson's Eighth Amendment claims against ARNP Nichols, CHO Rummel, and Assistant Warden Haas should be dismissed.

In light of the recommendations of the undersigned that Thompson's claims against ARNP Nichols, CHO Rummel, Assistant Warden Haas, and Officer John Doe be dismissed, the undersigned additionally recommends that this case be transferred to the Southern District of Florida for disposition of Thompson's claims against the only remaining Defendant, Officer Belhomme, pursuant to 28 U.S.C. § 1404(a).[6]  A district court may transfer any case to any other district where

---

[5] Although Defendant John Doe did not join in the motion to dismiss (Thompson failed to identify him, as he was ordered to do by the district court in the Southern District prior to transfer of the case (*see* doc. 15)), the court may, at any time, dismiss any claim that fails to state a claim on which relief may be granted or that seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B).

[6] As explained in Dubin v. United States, 380 F.2d 813, 816 (5th Cir. 1967), "[i]n substance, § 1404 is the statutory enactment of the doctrine of forum non conveniens tempered to allow transfer rather than dismissal.  By contrast, § 1406 operates in cases where the first forum chosen is improper in the sense that the litigation may not proceed there."

the case originally may have been brought.  28 U.S.C. § 1404(a).  To transfer an action under section 1404(a) the following criteria must be met:  (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties.  *See* Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996).  The court's consideration of the § 1404(a) factors may include such criteria as the plaintiff's initial choice of forum, the convenience of the parties, the convenience of the witnesses, the relative ease of access to sources of proof, the location of relevant documents, the availability of compulsory process for witnesses, the financial ability to bear the cost of the change, and trial efficiency.  *See* Tampa Bay Storm, Inc. v. Arena Football League, Inc., 932 F. Supp. 281, 282 (M.D. Fla. 1996). Federal courts ordinarily accord deference to a plaintiff's choice of forum.

The decision to transfer an action pursuant to § 1404(a) is left to the "sound discretion of the district court and [is] reviewable only for an abuse of that discretion."  Roofing & Sheeting Metal Serv. v. La Quinta Motor Inns, 689 F.2d 982, 985 (11th Cir. 1982); *see also* Brown v. Connecticut Gen. Life Ins. Co., 934 F.2d 1193, 1197 (11th Cir. 1991).  Such transfers may be made sua sponte by the district court.  Mills v. Beech Aircraft Corp., 886 F.2d 758, 761 (5th Cir. 1989); Robinson v. Madison, 752 F. Supp. 842, 846 (N.D. Ill. 1990) ("A court's authority to transfer cases under § 1404(a) does not depend upon the motion, stipulation or consent of the parties to the litigation."); Empire Gas Corp. v. True Value Gas of Florida, Inc., 702 F. Supp. 783, 784 (W.D. Mo. 1989); *accord* Roofing & Sheeting, 689 F.2d at 991 n.14.

In this case, analysis of the relevant factors leads the undersigned to conclude that they favor transfer.  Thompson initially chose the Southern District as the forum for this action, despite the fact that he was located in the Northern District at that time.  Further, the convenience of the parties weighs in favor of transfer to the Southern District, since the only remaining Defendant is located there.  As to convenience of witnesses and the availability of compulsory process for witnesses, it appears that most of the witnesses are located in the Southern District.[7]  Additionally, sources of

---

[7]Thompson identified two inmates who witnessed Belhomme's alleged use of excessive force, Timothy Rogers, #339040, and Tavares Mack, #368013 (doc. 1 at 8).  The website of the Florida Department of Corrections indicates Inmate Rogers is currently housed at Dade Correctional Institution, and Inmate Mack is housed at the South Florida Reception Center.  *See* www.dc.state.fl.us/, Inmate Population Information Search.  Both of those facilities are located

proof would be more readily accessible in the Southern District, since the events underlying the remaining claims occurred there.  Finally, transferring venue to the Southern District would result in no additional financial cost to the parties.  Therefore, consideration of the relevant factors leads the undersigned to conclude that this action should be transferred to the United States District Court for the Southern District of Florida for disposition of Thompson's claims against the sole remaining Defendant, Officer Belhomme.

Finally, with regard to Thompson's state law claims for negligence against Defendants Nichols, Rummel, Haas, and John Doe, it is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over state claims against a defendant.  *See* Baggett v. First National Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997).  Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction.  *See also* United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 1138–39, 16 L. Ed. 2d 218 (1966).  Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction.  Baggett, 117 F.3d at 1353 (citing Palmer v. Hospital Authority of Randolph County, 22 F.3d 1559, 1569 (11th Cir. 1994); Executive Software N. Am. v. United States Dist. Court, 15 F.3d 1484, 1493 (9th Cir. 1994); New England Co. v. Bank of Gwinnett County, 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); Fallin v. Mindis Metals, Inc., 865 F. Supp. 834, 841 (N.D. Ga. 1994)).  Taking these factors into account in this case, the undersigned concludes that Thompson's state law claims against Defendants Nichols, Rummel, Haas, and John Doe should be dismissed to permit him to pursue his state law claims in a more appropriate forum. The state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so.

IV.   CONCLUSION

For the foregoing reasons, the undersigned recommends that Defendants Nichols, Rummel, and Haas's motion to dismiss, pursuant to Fed. R Civ. P. 12(b)(6), be granted as to Thompson's

---

in the Southern District.

Case No.:  3:12cv11/LAC/EMT

Eighth Amendment claims against them.  The undersigned also recommends that Thompson's Eighth Amendment claim against Officer John Doe be dismissed for failure to state a claim on which relief may be granted, pursuant to § 1915(e)(2)(B)(ii).  With regard to Thompson's state law claims against Defendants Nichols, Rummel, Haas, and John Doe, the undersigned recommends that the court decline to exercise supplemental jurisdiction over the claims.   In light of these recommendations, the undersigned additionally recommends that this case be transferred to the Southern District of Florida for disposition of Thompson's claims against the only remaining Defendant, Officer Belhomme.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That Defendants Haas, Nichols, and Rummel's motion to dismiss (doc. 38) be **GRANTED**, and that Plaintiff's federal claims against these Defendants be **DISMISSED with prejudice** for failure to state a claim on which relief may be granted.

2.     That Plaintiff's federal claim against Defendant Officer John Doe be **DISMISSED with prejudice** for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

3.     That Plaintiff's state law claims against Defendants Haas, Nichols, Rummel, and Officer John Doe be **DISMISSED without prejudice** to Plaintiff's right to assert them in state court.

4.     That Defendants Haas, Nichols, Rummel, and Officer John Doe be **DISMISSED** from this action.

5.     That the clerk **TRANSFER** this case to the United States District Court for the Southern District of Florida for disposition of Plaintiff's claims against the sole remaining Defendant, Officer Belhomme.

6.     That the clerk be directed to close this case.

**DONE AND ORDERED** this 30th day of April 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).